In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00081-CR


______________________________




ANDRE DEMONT BROWN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 3rd Judicial District Court


Anderson County, Texas


Trial Court No. 28968




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Andre Demont Brown appeals the adjudication of his guilt for the underlying offense of
burglary of a habitation, enhanced. (1) Brown pled true to the allegations contained in the State's
motion to revoke, and the trial court sentenced him to thirty-five years' imprisonment.

 Brown contends that he was denied due process because the trial court refused to consider
the full range of punishment and because of the trial court's bias against community
supervision--and because of its bias against Brown.

 Pursuant to a plea agreement, Brown was placed on deferred adjudication community
supervision July 19, 2007, for the offenses of burglary of a habitation, enhanced, and unauthorized
use of a vehicle. The State filed a motion to revoke community supervision alleging that Brown
committed theft on September 27, 2007, failed to abstain from the use of narcotic drugs or other
controlled substances, and failed to report to his community supervision officer for the months of
August and September 2007.

 The trial court heard Brown's plea of "true" to the allegations contained in the State's motion
to revoke, and, after hearing testimony, rendered its judgment adjudicating guilt and sentencing
Brown to thirty-five years' imprisonment on December 20, 2007. The range of punishment for this
enhanced offense is five to ninety-nine years. See Tex. Penal Code Ann. § 12.42(b) (Vernon Supp.
2008). 

 The Constitutional mandate of due process requires a neutral and detached judicial officer
who will consider the full range of punishment and mitigating evidence. See Gagnon v. Scarpelli,
411 U.S. 778, 786-87 (1973). A trial court denies due process when it arbitrarily refuses to consider
the entire range of punishment for an offense or refuses to consider mitigating evidence and imposes
a predetermined punishment. Ex parte Brown, 158 S.W.3d 449, 454 (Tex. Crim. App. 2005). This
occurs when a trial court actually assesses punishment at revocation consistent with the punishment
it has previously announced it would assess upon revocation. Id. at 456-57; Sanchez v. State, 989
S.W.2d 409, 411 (Tex. App.--San Antonio 1999, no pet.). In the absence of a clear showing to the
contrary, we presume that the trial court was neutral and detached. Fielding v. State, 719 S.W.2d
361, 366 (Tex. App.--Dallas 1986, pet. ref'd) (citing Thompson v. State, 641 S.W.2d 920, 921 (Tex.
Crim. App. 1982)).

 Brown contends the record shows that the court refused to consider the full range of
punishment and thus violated his due-process rights because the trial court asked Brown whether he
was a convicted felon, and then made statements to Brown such as, "you got a hell of a deal" and
"You shouldn't have got probation," referring to Brown's original plea agreement to accept ten years'
deferred community supervision. (2)

 A court denies due process and due course of law if it arbitrarily refuses to consider the entire
range of punishment for an offense or refuses to consider the evidence and imposes a predetermined
punishment. Granados v. State, 85 S.W.3d 217 (Tex. Crim. App. 2002); Johnson v. State, 982
S.W.2d 403, 405 (Tex. Crim. App. 1998). Such a complaint is not preserved for review unless a
timely objection is raised. Teixeira v. State, 89 S.W.3d 190, 192 (Tex. App.--Texarkana 2002, pet.
ref'd); Washington v. State, 71 S.W.3d 498, 499 (Tex. App.--Tyler 2002, no pet.); Cole v. State, 757
S.W.2d 864, 865 (Tex. App.--Texarkana 1988, pet. ref'd). No objection was made to the court's
ruling; thus, the complaint was waived. 

 Even if we could properly reach this issue, the record does not show that the trial court
imposed a "predetermined" punishment, see Brumit v. State, 206 S.W.3d 639 (Tex. Crim. App.
2006), nor does it show that the court had a bias against community supervision--it does show that
it believed community supervision was not appropriate for this particular defendant's situation. 
Thus, no error would be shown in any event.

 Brown further contends that the trial court imposed this sentence because of its bias against
Brown, based on a series of exchanges between court, counsel, and Brown.

 At the hearing, Brown testified he had been in prison for twelve years and had been released
in 2004, that he was thirty-seven years old, and had three children. He testified that he "got back
. . . in the wrong crowd, got back on drugs." 

 At the revocation hearing, the following exchange occurred:

 THE COURT: Mr. Brown, and I'm not fussing at you. I fuss at everybody
that's plead [sic] guilty. It just amazes me. You've already been to prison. I mean,
what you did, I mean, you stole a pressure hose. You've just been a pain, you know. 
You're just -- you're not so much the great big bad criminal, you're just a pain in the
butt. You just won't measure up to do what the rest of us have to do. You know, you
got cocaine. It's just -- it's just amazing to me. 


 What does it take to get your attention? You say, well, I was young. Well,
hell, you did most of it this year. You're 30 -- you're in your mid thirties.


 You've got three children. When's the last -- let me ask you. When's the last
time you paid child support for those children?

 

 [Appellant]: Sir, I haven't paid it --


 THE COURT: Never paid it?


 [Appellant]: -- since 2000 -- I've been locked up since --


 THE COURT: I understand that. Well, who do you -- who takes care of
those kids, their mother?


 [Appellant]: Yes, sir.


 THE COURT: And probably gets some help from the state tax payers.


 [Appellant]: Yes, sir.


 THE COURT: So me and him and everybody else in here has got to pay
child support for you while you didn't do anything else.


 [Appellant]: Yes, sir.


 THE COURT: I mean, you know, there's something as just being sorry.


 The court, in pronouncing sentence, stated:

 Mr. Brown, you went down for robbery and you went down for delivery of [a]
controlled substance. You were dealing drugs and you got to taking things from
people that didn't belong to you. Then you come along now -- you got a hell of a
deal. 


 . . . .


 You've been out of prison for three years and they let you go on probation. Didn't
you realize how -- how -- what a good deal you made? Did you? 


 . . . .


 You shouldn't have got probation. Let's be honest. And -- and I'm saying that, I don't
even know who signed this thing or who put you on probation, but that was the best
deal you could ever have. That's a better deal than I've ever seen. Do you
understand? 

 The parties have a right to a fair trial. Dockstader v. State, 233 S.W.3d 98, 108 (Tex.
App.--Houston [14th Dist.] 2007, pet. ref'd); Markowitz v. Markowitz, 118 S.W.3d 82, 86 (Tex.
App.--Houston [14th Dist.] 2003, pet. denied). One of the most fundamental components of a fair
trial is a neutral and detached judge. Dockstader, 233 S.W.3d at 108; Markowitz, 118 S.W.3d at 86. 
A judge should not act as an advocate or adversary for any party. Dockstader, 233 S.W.3d at 108. 
To reverse a judgment on the ground of improper conduct or comments of the judge, we must find
from a review of the entire record (1) that judicial impropriety was in fact committed, and
(2) probable prejudice to the complaining party. Id. Judicial remarks critical or disapproving of, or
even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality
challenge. Id. Such remarks may constitute bias if they reveal an opinion deriving from an
extrajudicial source; however, when no extrajudicial source is alleged, such remarks will constitute
bias only if they reveal such a high degree of favoritism or antagonism as to make fair judgment
impossible. Id.

 We conclude that the record does not show that the trial court predetermined Brown's
sentence in this case, nor does the record show bias or partiality on the part of the trial court. (3) Brown
had been out of prison less than three years before entering a plea agreement for deferred
adjudication for the offenses of unauthorized use of a vehicle and burglary of a building in July 2007. 
He then failed to meet the requirements of his community supervision and was back before the court
in December 2007 on the State's motion to revoke. Annoyance or disgust with a defendant's
continued criminal behavior despite having more than one opportunity to change his ways--does
not reflect bias. The highest punishment range for this offense is ninety-nine years in prison, and the
trial court sentenced Brown to thirty-five years, near the lower range of punishment. 

 We find no error. Brown's due-process rights were not violated, and we overrule his points
of error.

 We affirm the trial court's judgment.


 Bailey C. Moseley

 Justice


Date Submitted: August 29, 2008

Date Decided: September 15, 2008


Do Not Publish
1. This case has been transferred to this Court as part of the Texas Supreme Court's docket
equalization program.
2. Brown's adjudication proceeding was heard before a different judge than the judge who
placed him on deferred community supervision.
3. Counsel directs our attention to our opinion in Stafford v. State, 948 S.W.2d 921 (Tex.
App.--Texarkana 1997, pet. ref'd). That opinion addresses a disqualification/recusal scenario, and
is not relevant to this analysis.



. 
            The Attorney General also argues that the records should be released because another portion
of the Pension Statute (Section 26(b)) specifically allows disclosure of the fact that a particular
person is a participant in the system. The Attorney General argues that Section 26(a) and (b) can
only be harmonized by construing 26(a) "narrowly"—it prohibits the public release of pension
information only when such release would identify a pension individual and pension system
information. Identifying a person as a participant is not equivalent to providing details about that
person's participation. The records, which could (but might not) contain such details are the specific
type of documents that are not subject to the PIA. The Pension Statute does not differentiate
between various types of records held by the pension system—or suggest that some are subject to
the PIA while some are not—or that some might be shifted to be under the aegis of the PIA if some
particular type of information was redacted from the record. Again, the statute states that records
in custody of the system concerning individual members are not public information under
Chapter 552 of the Texas Government Code. See Tex. Gov't Code Ann. §§ 552.001–.353 (Vernon
2004 & Supp. 2005). That pronouncement has a degree of clarity uncommon to many legislative
enactments. 
(3) It would create an exception that would allow HMEPS to administratively operate
outside of any public scrutiny. 

            We recognize that the reason behind the Attorney General's reasoning is this: part of the
information sought was salary and bonus records, which are—when public
information—discoverable under the PIA. That argument, nonetheless, runs contrary both to the
language of the Pension Statute and the internal pronouncement of the PIA itself. See Tex. Gov't
Code Ann. § 552.101 (Information is excepted from the requirements of the Act if it is confidential
by law—either constitutional, statutory, or by judicial decision.).
            (4) May the records be released if identifying information has been redacted?
            The Attorney General further argues that the schedules are public information because one
section of Section 26(a) allows the release of some records if identifying information has been
redacted. 
            To reach that conclusion, the Attorney General theorized that, if the information was
"de-identified" to remove the names, the information was within the scope of the Act, and subject
to disclosure. The Attorney General suggests that the records are not excluded unless they provide
information about individual members AND also are not redactable to hide the identity of the
individual. 
            That position ignores the clear language of the Pension Statute. The "and" phrase on which
the Attorney General relies does not either necessarily or by any reasonable implication require that
combination of factors before the records are "not public information." The statute contains two
separate confidentiality clauses, designed to protect records in two different situations: (1) the
records are not public information (thus not required to be produced under the PIA), and (2) the
records may not be disclosed in a form identifying the individual (except in certain, specified
circumstances).
            The Pension Statute specifically states that records in the custody of the pension system about
its members are not subject to the PIA. We have no authority or inclination to rewrite a clear
statutory pronouncement. 
Are the HMEPS Schedules Subject to Disclosure Under the Open Meetings Act? 
            The Attorney General also suggests that the documents should be available because the Open
Meetings Act requires disclosure of the minutes of an open meeting. See Tex. Gov't Code Ann.
§ 551.022. This argument, and its statutory support, was not presented to the trial court, and is thus
not properly before us for review. See Tex. R. App. P. 33.1. Although the trial court did mention
the Act while making its oral ruling, the ruling was not based on that Act, and it does not appear in
the trial court's judgment. 
            As pointed out by appellant, however, even if that theory of recovery was before this Court,
that Act requires "minutes" to be released to the public. Minutes are required to (1) state the subject
of deliberation, and (2) indicate the result of the vote or decision. Tex. Gov't Code Ann.
§ 551.021(b). The Attorney General argues that, because during the meetings the schedules
addressing pension payments and requests for benefits were considered during the Board's
deliberations, and because those schedules have been filed along with the minutes, they are
equivalent to being part of the minutes. The Attorney General has directed us to no authority
requiring that result, and we are aware of none.
            We reverse and render judgment in favor of the Houston Municipal Employees Pension
System.
 
                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          April 18, 2006
Date Decided:             May 9, 2006