

# NUMBER 13-11-00593-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MARY HELEN LINO A/K/A**                                      **Appellant,**
**MARY HELEN GARCIA LINO,**

**v.**

**THE STATE OF TEXAS,**                                           **Appellee.**

---

### On appeal from the 156th District Court
### of Bee County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Garza

A jury found appellant, Mary Helen Lino a/k/a Mary Helen Garcia Lino, guilty of

driving while intoxicated (DWI), third or more, enhanced to a second-degree felony.

*See* TEX. PENAL CODE ANN. §§ 12.42(a), 49.09(b)(2) (West Supp. 2011).[1]  The trial court

sentenced appellant to fifteen years' imprisonment and imposed a $5,000 fine.  *See id.*

§ 12.33 (West 2011) (stating punishment for second-degree felony is not more than

twenty years or less than two years and fine not to exceed $10,000).  By two issues,

appellant contends:   (1) the trial court erred in failing to consider the full range of

punishment; and (2) the evidence is insufficient to support her conviction.  We affirm.

## I. BACKGROUND

### A. State's Evidence

### 1. Matthew Miller

Matthew Miller, a patrol officer with the City of Beeville Police Department,

testified that around 2:50 a.m. on December 8, 2010, he observed a truck almost hit a

guardrail.  Officer Miller conducted a traffic stop and identified appellant as the driver.

As he approached the vehicle, Officer Miller detected the odor of alcohol.  As appellant

exited and walked to the rear of the truck, she appeared unsteady.  In response to the

officer's question, appellant stated that she had consumed two beers.  Patrol supervisor

for the Beeville Police Department, Christopher Vasquez, arrived and observed as

Officer Miller questioned appellant.  Officer Miller conducted three field sobriety tests.

First, he conducted a horizontal gaze nystagmus (HGN) test.  He found six "clues,"

which means that the subject is most likely intoxicated.  Officer Miller next conducted a

walk-and-turn test, which appellant failed to successfully complete.   Finally, he

conducted the one-legged-stand test.  Appellant attempted to perform this test, but

stopped and admitted that she was unable to do so.  Officer Miller concluded that

---

[1] Because the most recent amendments are not material here, we cite the current versions of the statutes.

appellant was intoxicated. He arrested her and transported appellant to the police station.

On cross-examination, Officer Miller admitted that he did not properly instruct appellant regarding how to perform the walk-and-turn test when he failed to instruct her to watch her feet while performing the test. Officer Miller also stated that appellant talked about her weight when she was unable to perform the one-legged-stand test, but the officer did not believe that being overweight would influence a person's ability to perform the test.

### 2. Christopher Vasquez

Officer Vasquez testified that he learned of Officer Miller's traffic stop from the police radio and joined the stop. Officer Vasquez saw appellant exit her vehicle; he observed that she had a "slight swagger" and was slightly swaying as she spoke to Officer Miller. When Officer Miller began to conduct the field sobriety tests, Officer Vasquez moved Officer Miller's patrol car so the tests would be recorded by the camera in the patrol car.[2] Officer Vasquez could not see appellant's eyes as she performed the HGN test, but he observed three "clues of intoxication" when appellant performed the walk-and-turn test; according to Officer Vasquez, two "clues" are sufficient to establish probable cause that a person is intoxicated. He also observed appellant fail to successfully perform the one-legged-stand test. Again, he observed three "clues" of intoxication on the one-legged-stand test; he said that two "clues" are sufficient to show probable cause of intoxication.

Officer Vasquez testified that he is certified to perform a breathalyzer test.

---

[2] The video was played for the jury and admitted into evidence.

Officer Miller transported appellant to the county jail. Officer Vasquez explained the procedure for administering the breathalyzer test. He followed the procedure by administering two breath tests on appellant. The breath test results, which showed that appellant was intoxicated with a breath alcohol content of 0.089, were admitted in evidence.

### 3. Carl LeCocke

Carl LeCocke, a supervisor of the Breath Alcohol Testing Bureau of the Texas Department of Public Safety, testified that he is certified to check breathalyzer equipment. He checks the equipment once a month. The breathalyzer machine used in this case was tested before and after it was used to administer appellant's breath tests, and it was working properly.

## II. FAILURE TO CONSIDER FULL RANGE OF PUNISHMENT

By her first issue, appellant complains that she was denied due process of law when the trial court refused to consider the full range of punishment at sentencing.[3] Specifically, appellant complains of the following statements by the trial court at the August 12, 2011 sentencing hearing:

> I feel like at times, I think I mentioned before, we try to make a statement or position on certain cases. In this case[,] I am not going to sentence you to any less than you got the last time you were found guilty of a felony DWI, which was ten years. And considering the enhancement, which allows me to upgrade it, I am going to resentence you to the 15 years Institutional Division Texas Department of Criminal Justice, $5,000 fine.

The State argues that because appellant did not object to her sentence on this

---

[3] Appellant was initially sentenced on May 24, 2011 to fifteen years' imprisonment and assessed a $5,000 fine. Appellant's counsel filed a motion for new trial, asserting that she had misstated the burden of proof concerning pending unadjudicated felony offenses. The trial court granted the motion and a new sentencing hearing was held on August 12, 2011, after which the same sentence and fine were imposed.

ground, she failed to preserve the issue for our review. *See* TEX. R. APP. P. 33.1. The record reflects that appellant did not object at the sentencing hearing, but timely raised the issue in a motion for new trial. Assuming, without deciding, that appellant preserved the issue, we find it to be without merit.

Due process requires trial judges to be neutral and detached in assessing punishment. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (holding judge's comments that earlier case made him think anybody who ever harmed a child should be put to death did not reflect bias, partiality, or failure to consider full range of punishment). A trial court denies a defendant due process if it arbitrarily refuses to consider the entire range of punishment. *See id.; McClenan v. State*, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983), *overruled on other grounds by De Leon v. Aguilar*, 127 S.W.3d 1, 5–6 (Tex. Crim. App. 2004 (orig. proceeding); *Jaenicke v. State*, 109 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (finding no due process violation where a trial court stated that it was forced to assess the maximum sentence because juries had assessed the maximum in less heinous cases). In determining a proper sentence, a judge must consider all relevant evidence and tailor the sentence to the particular offense and defendant. *See Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). Absent a clear showing to the contrary, we presume that the trial court was neutral and detached in assessing an appellant's punishment and that the trial court considered the full range of punishment. *See Brumit*, 206 S.W.3d at 645; *Jaenicke*, 109 S.W.3d at 796.

At the May 24, 2011 sentencing hearing, the trial court heard evidence that appellant had a criminal history that included two prior misdemeanor DWIs, two prior

5

felony DWIs, and convictions for several other offenses; she also had a pending charge of theft against an elderly person. The State asked for the maximum sentence of twenty years' imprisonment and a fine of $10,000. The State argued that appellant "has already been to prison for DWI once and didn't learn her lesson." Appellant's counsel asked the trial court to consider probation, or alternatively, to consider a sentence of "less than 20 years."

The trial court responded:

> But the jury has made a determination in this case that you were guilty of the felony offense and you have plead[ed] true to me either of the two misdemeanors [DWIs] or the two prior felonies [DWIs] back in '04[,] I think is when you were originally sentenced by Judge Johnson, if I'm correct—no, 2005, excuse me.

> At that point this Court, I feel like whether it is me or Judge Johnson or Judge Welborn, we all try, we feel like we uphold each other's rulings. The Court at that time gave you an opportunity. They reduced one of your sentences down from ten years to six years, and I don't believe you made yourself available to try to work on those issues.

> We can't put everyone that—and I wish we could—everyone that had a drug or alcohol problem or eating disorder or smoking problem into state-supported rehabilitation. You've got to unfortunately work on that sometimes on your own, and I do believe that I called this a mental illness, but it has to be like diabetes.

> It's like your breast cancer. You are taking advantage of the opportunities. Luckily the United States has the medication for that, but I don't feel like you have done that for your drinking problem.

> I'm going to sentence you to 12 years—no, excuse me—15 years, I apologize, in the Institutional Division of the Texas Department of Criminal Justice and assess a $5,000 fine.

At the August 12, 2011 resentencing hearing, the State offered into evidence the pre-sentence investigation report and the transcript of the earlier sentencing hearing. The State requested that the court impose a sentence of fifteen years. Appellant's

counsel requested a sentence of nine years, to run concurrently with the sentence imposed for the felony theft against the elderly offense.

Although the court announced that it was not considering a sentence less than ten years, it did so in the context of "considering the enhancement, which allows [the court] to upgrade [the sentence] . . . ." On this record, we conclude that the trial court did not determine the sentence without considering the evidence or the full range of punishment. *See Brumit*, 206 S.W.3d at 645. The trial court did not arbitrarily impose a predetermined punishment. *See Howard v. State*, 830 S.W.2d 785, 787 (Tex. App.—San Antonio 1992, pet. ref'd). After considering the entire record, we decline to hold that the trial court's statements support an inference that the court failed to consider the full range of punishment. Therefore, we conclude that appellant was not denied due process and due course of law. *See Brumit*, 206 S.W.3d at 645; *Jaenicke*, 109 S.W.3d at 796. We overrule appellant's first issue.

### III. Sufficiency of the Evidence

By her second issue, appellant contends the evidence is insufficient to support her conviction.

### A. Standard of Review and Applicable Law

The court of criminal appeals has held that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902–03, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, we review claims of evidentiary sufficiency under "a rigorous and

7

proper application of the *Jackson* standard of review." *Id.* at 906–07, 912. Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Brooks*, 323 S.W.3d at 898–99 (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt").

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik*, 953 S.W.2d at 240).

A person commits the offense of driving while intoxicated if the person (1) is intoxicated (2) while operating a motor vehicle (3) in a public place. TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2011).

## B. Analysis

Appellant contends that the evidence is insufficient because Officer Miller was not qualified to conduct the field sobriety tests, did not know that being overweight could invalidate the one-legged-stand test, and did not instruct appellant properly on the walk-and-turn test. We disagree.

Under the Texas DWI statute, intoxication may be proven in either of two ways: (1) loss of normal use of mental or physical faculties; or (2) alcohol concentration in the blood, breath, or urine of 0.08 or more. *Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010). The first definition is the "impairment" theory, while the second is the "per se" theory. *Id.* The court of criminal appeals has stated:

> [Blood-alcohol-content]-test results, even absent expert retrograde extrapolation testimony, are often highly probative to prove both per se and impairment intoxication. However, a BAC-test result, by itself, is not sufficient to prove intoxication at the time of driving. There must be other evidence in the record that would support an inference that the defendant was intoxicated at the time of driving as well as at the time of taking the test. . . . . Other evidence that would logically raise an inference that the defendant was intoxicated at the time of driving as well as at the time of the BAC test includes, inter alia, erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, any admissions by the defendant concerning what, when, and how much he had been drinking—in short, any and all of the usual indicia of intoxication.

*Id.* at 745.

Here, in addition to appellant's breathalyzer test results, the record contains other evidence raising an inference that appellant was intoxicated at the time she was driving. Officer Miller testified that (1) appellant was driving abnormally; (2) he detected the odor of alcohol when he approached her vehicle; (3) appellant was unsteady on her feet and admitted to drinking two beers; (4) appellant failed to successfully perform all three field sobriety tests; and (5) appellant did not have the normal use of her physical and mental faculties. Officer Vasquez testified that: (1) appellant was swaying; and (2) appellant was unable to successfully perform the walk-and-turn test or the one-legged-stand test. The jury also saw the videotape of appellant as she attempted to perform the field sobriety tests. We conclude that the record contains some evidence upon which a

rational factfinder could conclude, beyond a reasonable doubt, that appellant was driving while intoxicated. *See Kirsch*, 306 S.W.3d at 745; *Brooks*, 323 S.W.3d at 898–99. We overrule appellant's second issue.

## IV. Conclusion

We affirm the trial court's judgment.


DORI CONTRERAS GARZA
Justice

Do not publish.
Tex. R. App. P. 47.2(b)

Delivered and filed the
19th day of July, 2012.